# ITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**STEVEN G. JOHNSON,**                              Chapter 7
    Debtor                                     Case No. 09-19214-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**THE LAW OFFICES OF MIRIAM G.
ALTMAN, P.C.,**
    Plaintiff
v.                                              Adv. P. No. 09-1387
**STEVEN G. JOHNSON,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

This adversary proceeding presents the issue of whether a debtor's obligation,

pursuant to a probate court judgment, to pay to his former spouse's attorney fees for

defending a complaint for modification of child support is excepted from discharge under

11 U.S.C. §§ 523(a)(5), (a)(15) or (a)(6).  The issue arises in the context of the following

matters which are before the Court:  1) the Plaintiff's Supplemental Motion for Summary

Judgment as to Counts I and II of Its Amended Adversary Complaint (#39); 2) the

Plaintiff's Second Supplemental Motion for Partial Summary Judgment as to Counts I, II

1

and VI of Its Second Amended Adversary Complaint (#121); 3) the Defendant's Opposition

and Motion to Strike Plaintiff's Supplemental Motion for Partial Summary Judgment as to

Counts I and II of Its First Amended Adversary Complaint (#43); and 4) the Defendant's

Supplemental Memorandum of Law in Support of His Opposition to the Plaintiff's Motion

for Partial Summary Judgment as to Counts I & II of Its First Amended Complaint and

Motion for Partial Summary Judgment as to Counts I, III and IV [sic] of Its Second

Amended Complaint (#141).[1]  The Court consolidated resolution of two additional matters

with the matters pending in the adversary proceeding: 1) the Debtor's "Motion to Avoid

Judicial Lien on Debtor's Homestead Created by Judicial Lien by Creditor Suzanne

Thatcher;" and 2) "Creditor the Law Offices of Miriam G. Altman, P.C.'s Motion for Ruling

Concerning Its Status and Rights as a Domestic Support Obligation Creditor with a Judicial

Lien."        The Plaintiff's Second Supplemental Motion for Partial Summary Judgment

as to Counts I, II and IV of Its Second Amended Complaint (the "Summary Judgment

Motion") and the Defendant's Opposition to that Motion are the dispositive documents to

resolve the specific issue of whether the Plaintiff, the Law offices of Miriam G. Altman, P.C.

---

[1] The Plaintiff originally filed a Motion for Partial Summary Judgment as to
Count I of Its First Amended Adversary Complaint (#16), supported by the Affidavits
of Miriam G. Altman, Esq. and Suzanne Thatcher and a Memorandum of Law.  The
Defendant objected to that Motion (#35) and supported his Objection with his Affidavit
and a Memorandum of Law.  The Plaintiff supported its Supplemental Motion for
Partial Summary Judgment as to Counts I and II of the First Amended Adversary
Complaint with a Supplemental Affidavit and a Supplemental Memorandum of Law.
The Defendant supported his "Opposition and Motion to Strike Plaintiff's Supplemental
Motion for Partial Summary Judgment" (#43) and his Opposition (#64) with a
Supplemental Memorandum and Supplemental Affidavit.

(the "Plaintiff"), has satisfied its burden of establishing the absence of any genuine issues of material fact with respect to the nondischargeability of the claims set forth in Counts I, II and VI of its Second Amended Complaint. The parties incorporated by reference the various affidavits and memoranda submitted in conjunction with the Plaintiff's original Motion for Partial Summary Judgment as to Count I and the Plaintiff's Supplemental Motion for Partial Summary Judgment as to Counts I and II of its Amended Complaint.

The Plaintiff's claims arise out of an award of legal fees to the Plaintiff in the amount of $138,720.41, which were set forth in a Judgment entered by the Middlesex Probate and Family Court, Department of the Trial Court (the "Probate Court"), on February 17, 2009. The award of attorney's fees followed a trial on the merits of a Complaint for Modification filed by Steven G. Johnson ( the "Debtor"), in which he sought a reduction of his weekly child support which is payable to his ex-spouse. The Plaintiff claims that the fees awarded to it are nondischargeable pursuant to 11 U.S.C. § 523(a)(5) (Count I); 11 U.S.C. § 523(a)(6) (Count II); and 11 U.S.C. § 523(a)(15) (Count VI).

The Court finds that, despite the assertions of the Defendant to the contrary, the material facts necessary to resolve the Summary Judgment Motion are not in dispute, and the matter is ripe for summary judgment. *See* Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056. The Court has core jurisdiction to decide the Summary Judgment Motion pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(I).

## II. FACTS

Suzanne Thatcher, f/k/a/ Suzanne Thatcher-Johnson ("Thatcher"), is the former

3

spouse of the Debtor. The background relating to the couple's divorce is set forth in an 18-page decision, captioned "Procedural History, Findings of Fact, Rationale, and Conclusions of Law," issued by the Probate Court on February 17, 2009 in conjunction with the Judgment pursuant to which the Plaintiff was awarded fees. Miriam G. Altman Esq., the principal attorney at the Law Offices of Miriam G. Altman, P.C. and an attorney specializing in family law, attached a copy of the decision to her Affidavit filed with this Court on April 7, 2010. Both parties attached numerous documents from the Probate Court proceeding, the authenticity of which is not in dispute.

A. The Probate Court's Decision

As determined by the Probate Court, Thatcher and the Debtor have two minor children. They were divorced pursuant to a Judgment of Divorce Nisi entered on December 4, 2006. The judgment incorporated a Separation Agreement, which obligated the Debtor to pay child support in the weekly amount of $485 to Thatcher. At the time of the divorce, Thatcher was employed as a Manager/Buyer for Russell's Garden Center with gross weekly income of approximately $1,000. The Debtor, while he was employed at Alpine Contractors, Inc., earned gross weekly income of $1,320 or $40.00 per hour.

In its decision, the Probate Court indicated that, following the divorce, the Debtor filed a Complaint for Modification of his child support obligation in which he alleged that he lacked the income and ability to pay child support at the current level. The Plaintiff represented Thatcher in the defense of the action.

On November 27, 2007, Thatcher, following the filing of an Answer to the Debtor's

4

Complaint for Modification, filed a Complaint for Contempt of Judgment in which she alleged the Debtor was in arrears with respect to his child support obligations and had failed to comply with other provisions of the parties' Separation Agreement. The Debtor reciprocated on December 28, 2007 by filing a Complaint for Contempt of Judgment in which he alleged that Thatcher had failed to live up to her obligations respecting the Judgment of Divorce Nisi. The Probate Court noted that the Debtor's Complaint was dismissed on January 16, 2009 with prejudice.

According to the Probate Court, on July 1, 2008, Thatcher filed a Motion for Attorney[']s Fees  pursuant to Mass. Gen. Laws ch. 208, § 38 in conjunction with her Complaint for Contempt regarding child support arrears. On July 10, 2008, the Probate Court allowed the Motion and awarded Thatcher attorney's fees in the sum of $25,000, payable by August 1, 2008. The Debtor failed to pay those fees by that date, and, on August 5, 2008, Thatcher filed another Complaint for Civil Contempt. That Complaint for Civil Contempt was consolidated with the Debtor's Complaint for Modification.

The Probate Court conducted a four-day trial, commencing in late September 2008 and concluding on January 8, 2009, issuing its decision and Judgment on February 17, 2009. As part of the rationale for its decision, the Probate Court determined that the Debtor, who was the majority owner of, and had been employed by, Alpine Contractors, Inc., "divested himself of a majority interest in what appears to have been a lucrative and viable company for no consideration" within approximately two months of the entry of the Divorce Judgment which incorporated the Separation Agreement; that the Debtor accepted

employment at Lowe's Home Center, Inc. voluntarily and not in good faith; that the Debtor deliberately was underemployed; that the Debtor, deliberately and with premeditation, caused his termination from Lowe's; that the Debtor's reasons for the termination of his employment at Lowe's were not credible; that the Debtor purchased a 2003 Mini Cooper for cash after being fired from Lowe's and after filing the Complaint for Modification, thus demonstrating "flagrant disregard for the Divorce Judgment, Separation Agreement, and child support Order, as well as manipulation of the court process;" that the Debtor depleted his assets in a short period of time and not "solely or even principally to fulfill his child support obligation;" and that the Debtor's testimony during the trial was evasive. In refusing to modify the Debtor's child support obligation, the Probate Court found that the Debtor "disregard[ed] . .. his support obligation to the children" and that there were no material changes in his financial circumstances that would warrant a reduction in his child support obligation.

B. The Probate Court Judgment and Post-Judgment Events

On February 17, 2009, the same day the Probate Court issued its decision, it entered a judgment in which it ordered: "Husband shall pay counsel fees in the amount of $138,720.41 to Wife's counsel within one hundred eighty (180) days of the date of this judgment." It also endorsed Thatcher's "Motion for Attorney[']s Fees and Costs Pursuant to M.G. L. C. 208, § 38," in which Thatcher requested attorney's fees in the sum of $113,720.41, stating:

I find Husband's Complaint was frivolous and an effort to  undermine the

> terms of the parties['] divorce agreement executed approximately 6 months
> before filing [the] complaint for modification.  Wife has incurred significant
> counsel fees in defense of a baseless modification.  Fees are allowed in the
> amount of $138,720.41.
>
> I find based on the affidavit filed by Atty[.] Altman, the fees sought are fair
> & reasonable under all of the circumstances.

The Debtor filed a notice of appeal of the Modification Judgment, but the appeal has not been adjudicated.

Thatcher filed a Complaint in Equity in the Probate Court for post-judgment security.  The Probate Court issued a writ of attachment and preliminary injunction restraining the Debtor from dissipating his assets.  The sheriff recorded the attachment in the amount of $113,720.41 Middlesex South Registry of Deeds on February 24, 2009 against the Debtor's property located at 4 High Rock Road, Wayland, Massachusetts.[2]  The amount of the attachment is $25,000 less that the attorney's fees awarded to Thatcher.

The Debtor failed to pay the total amount of the attorney's fees and costs awarded, and Thatcher filed a Complaint for Contempt on September 11, 2009.  The Complaint for Contempt was scheduled for September 30, 2009, but the Debtor filed his bankruptcy petition on September 29, 2009, as well as a Suggestion of Bankruptcy and Motion for Stay in the Probate Court.

---

[2] The Debtor filed a Motion to Avoid Judicial Lien on Debtor's Homestead Created by a Judicial Lien by Creditor Suzanne Thatcher.  He also filed an Objection to "Creditor the Law Offices of Miriam G. Altman, P.C.'s Motion for Ruling Concerning Its Status and Rights as a Domestic Support Obligation Creditor with a Judicial Lien."  The Court heard these matters on January 28, 2010 and consolidated these matters with the Adversary Proceeding.

Pursuant to the Second Amended Adversary Proceeding, the Plaintiff alleges that it is owed $61,010.84. According to the Plaintiff, Thatcher has paid it $52,709.57 in connection with her defense of the Complaint for Modification. From the amount of the attachment and the sums requested by the Plaintiff, it is evident that the Debtor paid $25,000 to the Plaintiff in 2008 or 2009.

C. The September 21, 2010 Hearing and the Arguments of the Parties

On September 21, 2010, this Court conducted a hearing on Plaintiff's Supplemental Motion for Partial Summary Judgment as to Counts I and II of Its First Amended Adversary Proceeding. The Plaintiff, in its Supplemental Memorandum, argued that the decision of the Probate Court warranted a determination by this Court that there are no material facts in dispute as to exceptions to discharge for the fee award. According to the Plaintiff, the fee award is a nondischargeable domestic support obligation ("DSO") under 11 U.S.C. § 523(a)(5), or can be excepted from discharge under 11 U.S.C. § 523(a)(6) because the Debtor intentionally caused financial harm to the Plaintiff and Thatcher without just cause and excuse.

The Debtor objected to the Supplemental Motion for Partial Summary Judgment, arguing that the fee award was a sanction or punishment for pursuing the Complaint for Modification. He argued that a DSO is only applicable to a debt that is in the nature of alimony, maintenance, or support of a spouse, former spouse, or child of the debtor and that the award to the Plaintiff does not qualify under the definition set forth in the Bankruptcy Code. *See* 11 U.S.C. § 101(14A). Additionally, the Debtor complained that the

8

Plaintiff had "failed to . . . produce any documentary evidence establishing a liability or contractual relationship between the Plaintiff and the former spouse which raises the question of what type, if any, fee arrangement existed between the Plaintiff and the former spouse which would preclude the former spouse [from] having any liability for the attorney's fees in question."

At the September 21, 2010 hearing, the Court directed that the parties obtain clarification of the Probate Court's Judgment entered on September 17, 2009. The parties agreed to proceed with a request for clarification in the Probate Court. Accordingly, following the hearing, the Court entered an order directing the parties to seek clarification from the Probate Court on the following issues:

> 1) Whether the Probate and Family Court justice intended the fee award to be in the nature of spousal or child support even though the fee award was made to counsel to Suzanne Thatcher? 2) Whether the Probate and Family Court Justice intended [that] the fee award to be recoverable by Suzanne Thatcher in the event she paid Altman's fees? 3) Whether the Probate and Family Court justice intended that the obligation of Steven G. Johnson to pay Altman's fees was a debt owed to Suzanne Thatcher even though the fees were awarded to Altman? 4) Whether in ordering Steven G. Johnson to pay Altman's fees the Probate and Family Court justice intended to compensate Suzanne Thatcher for injury occasioned by the defense of frivolous litigation, which was commenced by Steven G. Johnson intentionally and without just cause and with specific intent to injure Suzanne Thatcher?

The Court further directed the parties to file with the Court any order or transcript of the Probate and Family Court clarifying the above issues.

D. <u>The Probate Court's Clarification of Judgment</u>

On November 19, 2010, the Probate Court entered an order, captioned "Clarification

of Judgment."  The Order provided that Paragraph 2 of the Judgment[3] entered on February

17, 2009 with respect to the Debtor's Complaint for Modification was clarified as follows:

> 1. The award of attorney[']s fees and costs in the Judgment is in the nature of child support, even though the fee award is made to counsel;

> 2. The fee award is to reimburse Mother in the event she had paid the attorney's fees;

> 3. The obligation of the Father to pay the Mother's Counsel is a debt to the Mother, even though the fees are awarded to the Mother's counsel; and

> 4. The award of fees is to compensate the Mother for injury occasioned by the defense of frivolous litigation which was commenced by the Father intentionally and without just cause and with specific intent to injure the Mother.

Between this Court's September 21, 2010 order and the Clarification of Judgment

entered by the Probate Court, the Plaintiff filed a Second Amended Adversary Complaint,

adding Court VI under 11 U.S.C. § 523(a)(15).  Following the Clarification of Judgment, the

Plaintiff filed its Summary Judgment Motion, and the Debtor filed his Supplemental

Memorandum in Support of His Opposition to that Summary Judgment Motion as well as

to the Plaintiff's earlier motion for partial summary judgment.

## III. APPLICABLE LAW

A. <u>Applicable Bankruptcy Law</u>

The Plaintiff seeks to except the award of attorney's fees under three subsections of

11 U.S.C. § 523.  They provide in relevant part the following:

---

[3] Paragraph 2 provides: "Husband shall pay $313.60 in child support arrears to Wife within thirty (30) days of the date of this Judgment."

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt– . . .

> (5) for a domestic support obligation;

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity; . . .

> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit . . . .

11 U.S.C. § 523(a)(5), (6), and (15).  A domestic support obligation is defined as

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is--

> > (A) owed to or recoverable by--

> > > (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> > > (ii) a governmental unit;

> > (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

> > (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--

> > > (i) a separation agreement, divorce decree, or property settlement agreement;

11

> (ii) an order of a court of record; or
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Because of the serious financial consequences of divorce, bankruptcy courts frequently have occasion to address issues under section 523(a)(5) and section (a)(15) and to interpret what is or what is not a DSO.  In Gilman v. Golio (In re Golio), 393 B.R. 56 (Bankr. E.D. N.Y. 2008), the court observed that prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),

> 11 U.S.C. § 523(a)(15) provided a debtor with statutory defenses to a former spouse's objection to the discharge of non-support type obligations based upon (1) whether the debtor has the ability to pay a debt relating to such obligation or (2) whether discharging such debt would result in a benefit to the debtor that would outweigh the detrimental consequences to the former spouse or child of the debtor.
>
> As a result of BAPCPA, a property settlement obligation incurred pursuant to a divorce is unqualifiedly also nondischargeable under section 523(a)(15). In individual Chapter 7 and 11 cases, 'the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship is of no practical consequence in determining the dischargeability of the debt. . . . The enactment of subsection 523(a)(15) and the increase in the scope of the discharge exception effected by the 2005 amendments, expresses Congress's recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments. State courts do not always draw a sharp distinction

between support and property division in providing for the post-divorce economic security of dependent family members. Property settlement arrangements are often "important components of the protection afforded individuals who, during the marriage, depended on the debtor for their economic well-being." 4 L. King, COLLIER ON BANKRUPTCY, ¶ 523.21 at 523-118 (15th ed. rev.2008). Therefore, this Court need not make a determination on whether the amounts awarded under the Judgments at issue constitute domestic support obligations under 11 U.S.C. § 523(a)(5) if the Plaintiff can demonstrate that the Judgments would be nondischargeable in any event under 11 U.S.C. § 523(a)(15) because each Judgment constitutes a debt (1) owed to or recoverable by "a spouse, former spouse, or child of the debtor" and (2) "is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record".

In re Golio, 393 B.R. at 61-62. In Golio, the bankruptcy court rejected the debtor's argument that a judgment for attorney's fees payable to his former spouse's attorney directly should not be excepted from discharge. The court observed that the debtor's argument elevated form over substance and was inconsistent with the legislative purpose of 11 U.S.C. § 523(a)(5) and (a)(15). Id. at 63. As the court in Golio recognized, however, courts are divided as to whether an award of attorney's fees payable to an attorney rather than to a spouse, former spouse, or child of the debtor can constitute a DSO.[4]

Numerous courts have considered the issue of whether attorney's fees incurred in matrimonial disputes and made directly payable to the attorney are excepted from discharge under either § 523(a)(5) as a DSO or under § 523(a)(15). The weight of authority and the most recent decisions hold that attorney's fees payable directly to the attorney are

_____

[4] Similar issues have arisen in connection with guardian ad litem fees. See O'Brine v. Gove (In re Gove), 2011 WL 111155 (Bankr. D. Mass. Jan. 13, 2011) (finding that the debtor's obligation to pay GAL fees was a DSO and nondischargeable under 11 U.S.C. § 523(a)(5)).

nondischargeable under either 11 U.S.C. § 523(a)(5) as a DSO or under 11 U.S.C. § 523(a)(15) as having been incurred in connection with a separation agreement or divorce decree. *See* Prensky v. Clair Greifer LLP, 2010 WL 2674039 (D. N.J. June 30, 2010); Tarone v. Tarone (In re Tarone), 434 B.R. 41 (Bankr. E.D.N.Y. 2010); In re Andrews, 434 B.R. 541 (Bankr. W.D. Ark. 2010); Aldrich v. Papi (In re Papi), 427 B.R. 457 (Bankr. N.D. Ill. 2010); Howard v. Sullivan (In re Sullivan), 423 B.R. 881 (Bankr. E.D. Mo. 2010); Landau & Assocs. v. Fricke (In re Fricke), 2010 WL 5475808 (Bankr. N.D. Ill. Dec. 30, 2010). *But see* In re Jones, 2010 WL 4008155 (Bankr. W.D. La. Oct. 12 ,2010) (penalty or civil penalty cost not a DSO); In re Spence, 2009 WL 3483741 (Bankr. S.D. Fla. Oct. 26, 2009) (sanctions for mediation violations not a DSO); In re Lopez, 405 B.R. 382 (Bankr. S.D. Fla. 2009) (award of attorney's fees did not constitute a DSO because fee award related to misconduct and not financial need). *See also* In re Kassicieh, 425 B.R. 467 (Bankr. S.D. Ohio 2010) (deferring determination of liability until the state court resolved issue of the parties' relative liability for the amount of guardian ad litem fees); Simon, Schindler & Sandberg, LLP v. Gentilini (In re Gentilini), 365 B.R. 251, 258 (Bankr. S.D. Fla. 2007) (holding in a pre-BAPCPA case that "Section 523(a)(5) of the Bankruptcy Code can and should be applied to debts in the nature of support payable to third parties if, and only if, at the time of the debtor's bankruptcy, the former spouse is also obligated to the third party.").

The United States Bankruptcy Appellate Panel for the First Circuit in Smith v. Pritchett (In re Smith), 398 B.R. 715 B.A.P. 1st Cir. 2008), *aff'd*, 586 F.3d 69 (1st Cir. 2009), considered the issue of whether a payment of $50 per day for every day that the debtor's

14

alimony payment was late was a DSO or a penalty.  In resolving the issue, the panel

analyzed two decisions of the United States Court of Appeals for the First Circuit, namely

Werthen v. Werthen (In re Werthen), 329 F.3d 269 (1st Cir. 2003), and  Macy v. Macy, 114

F.3d 1 (1st Cir. 1997).  The panel stated:

> Whether a claim is in the nature of support is a question of federal
> bankruptcy law. In re Werthen, 329 F.3d at 272-73; In re Hale, 289 B.R. at 791.
> In broad terms, support payments "provide for the upkeep of the recipient
> spouse [. . .] while other divisions or payments serve other purposes." In re
> Werthen, 329 F.3d at 273. A state court's denomination of an award as
> something other than alimony, maintenance or support is not controlling. Id.;
> 11 U.S.C. § 101(14A). Instead, the critical issue is whether the state court
> which entered the divorce decree and the parties who entered into a divorce
> agreement intended the award to serve as support or as "something else,"
> such as a division of jointly owned property. In re Werthen, 329 F.3d at
> 272-73. How the award in fact functioned does not necessarily reflect how it
> was intended to function, although it may be evidence of the court's or the
> parties' intent. In re Hale, 289 B.R. at 791 n. 4.
>
> ***
>
> Courts have found two types of awards to be in the nature of support even
> though they were not labeled as such by the state court: obligations resulting
> from a failure to make timely alimony payments, and property awards
> intended to function as support. *See* In re Werthen, 329 F.3d at 274; Macy v.
> Macy, 114 F.3d 1, 2 (1st Cir.1997). *Obligations resulting from a failure to make
> timely alimony payments include attorneys' fees incurred by the recipient spouse in
> enforcing the alimony obligation and interest that accrues on the underlying debt.*
> 11 U.S.C. § 101(14A); In re Macy, 114 F.3d at 2. These obligations are
> compensatory in that they serve only to make the recipient spouse whole
> where costs have been incurred in enforcing the alimony obligation, namely
> the cost of retaining services and the cost of the lost use of the funds. *See* id.

In re Smith, 398 at 721-22 (emphasis supplied, footnote omitted).  The analyses used by the

panel in Smith and the First Circuit in Macy with respect to alimony or spousal support

apply equally to child support obligations.  Moreover, as this court recognized in the pre-

BAPCPA case of <u>Macy v. Macy (In re Macy)</u>, 200 B.R. 467 (Bankr. D. Mass. 1996), *aff'd*, 114

F.3d 1 (1st Cir. 1997),

> Historically, the Courts and the Congress have tried to protect dependent spouses and children from the loss of alimony, support and maintenance owed them by a debtor who has sought refuge in bankruptcy. *See* <u>Wetmore v. Markoe</u>, 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904) ("Unless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children"). This policy of protecting those to whom alimony, support and maintenance is owed from spouses who file for bankruptcy is embedded in Section 523(a)(5). *See generally* <u>Shine v. Shine</u>, 802 F.2d 583, 585-588 (1st Cir.1986) (comprehensive discussion of Section 523(a)(5)'s legislative history before the Bankruptcy Reform Act). *See also* <u>Forsdick v. Turgeon</u>, 812 F.2d 801, 804 (2nd Cir.1987) (Section 523(a)(5) favors enforcement of familial obligations over general bankruptcy policy of discharging debt); <u>Tilley v. Jessee</u>, 789 F.2d 1074, 1077 (4th Cir.1986) (same); <u>In re Kline</u>, 65 F.3d 749, 751 (8th Cir.1995) (same); <u>In re Sternberg</u>, 85 F.3d 1400, 1405 (9th Cir.1996) (same); <u>In re Miller</u>, 55 F.3d 1487, 1489 (10th Cir.1995), *petition for cert. filed sub nom.*, <u>Miller v. Gentry</u>, 516U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995) (same). This policy is also one of the stated purposes of the Bankruptcy Reform Act. H.R.Rep. No. 835, 103d Cong., 2nd Sess. 33, reprinted in 1994 U.S.C.C.A.N. 3340, 3341-*471 3342. Indeed, Congress considered the payment of family obligations to be of "paramount societal importance," and used the Bankruptcy Reform Act to expand the alimony, support and maintenance exception to the general bankruptcy practice of discharging debt so that debtors may have a "fresh start." <u>Id.</u> at 3342.

200 B.R. at 470-71. BAPCPA reinforced and expanded that policy. Indeed, DSO claimants'

expanded rights are set forth in the following sections of the Bankruptcy Code:

> 1) § 362(b)(2)(B) [which] provides that the holder of a DSO claim may levy on non-estate assets without violating the automatic stay;
> 2) § 101(14A) provides an expanded definition for domestic support obligation;
> 3) §§ 523(a)(5) and 1328(a)(2) [which] provide that a discharge in chapter 7, 11, 12, or 13 does not discharge a debt for a DSO;

4) § 507(a)(1)(A) [which] creates a first priority for a DSO for distribution of estate assets by the trustee;

5) § 547(c)(7) [which] excludes payment of a DSO from a trustee's preference action; and

6) § 704(a)(10) [which] requires the trustee to provide notice to a DSO claimant of the claimant's rights to payment in the bankruptcy, information regarding assistance by government agencies in collecting child support during and after the bankruptcy case, and to provide other specified information.

*See* In re Ruppel, 368 B.R. 42, 44 n.4 (Bankr. D. Or. 2007).  Moreover, because the term DSO is "derived from the definition of a nondischargeable debt for alimony, maintenance, and support contained in the former Section 523(a)(5)[,] . . . case law construing the former Section 523(a)(5) is relevant and persuasive."  In re Johnson, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008).  Accordingly, the decision of the United States Court of Appeals for the First Circuit in Macy teaches that attorney's fees incurred in protecting a child support award are nondischargeable under 11 U.S.C. § 523(a)(5).

B. Collateral Estoppel

"'Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered.'" Silva v. Commonwealth of Massachusetts Land Court, 351 Fed. App'x. 450, 457-58 (1st Cir. 2009) (quoting Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008), cert. denied, __ U.S. __, 129 S.Ct. 2020 (2009)). "'Massachusetts recognizes two distinct types of preclusion arising out of the maintenance of prior litigation: res judicata (claim preclusion) and collateral estoppel (issue preclusion)." Silva, 351 Fed. App'x. at 458 (quoting Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48,

17

52 (1st Cir. 2008)).

According to the First Circuit in <u>Silva</u>,

> [T]he Supreme Judicial Court recently stated that issue preclusion applies
> when (1) there was a final judgment on the merits in the prior adjudication;
> (2) the party against whom preclusion is asserted was a party (or in privity
> with a party) to the prior adjudication; and (3) the issue in the prior
> adjudication was identical to the issue in the current adjudication.
> Additionally, [4] the issue decided in the prior adjudication must have been
> essential to the earlier judgment. Massachusetts courts also require that [5]
> appellate review must have been available in the earlier case before issue
> preclusion will arise.

351 Fed. App'x. at 458-59 (citations omitted).[5]  With respect to the final element, the

Massachusetts Supreme Judicial Court in <u>O'Brien v. Hanover Ins. Co.</u>, 427 Mass. 194 (1998),

held:

> The doctrine of issue preclusion requires a judgment to be "final" before that
> judgment can have preclusive effect. <u>Cousineau v. Laramee</u>, 388 Mass. 859,
> 863 n. 4, 448 N.E.2d 756 (1983). We have not yet decided whether a judgment
> by a lower court should be considered final for this purpose while it is on
> appeal. <i>See</i> <u>Massachusetts Prop. Ins. Underwriting Ass'n v. Norrington</u>, 395
> Mass. 751, 754, 481 N.E.2d 1364 (1985) (assuming, without deciding, that
> although an appeal from an insured's conviction was pending in the Appeals
> Court, his conviction constituted final judgment for issue preclusion
> purposes). The Federal rule, followed by a majority of the States, is that a trial
> court judgment is final and has preclusive effect regardless of the fact that it
> is on appeal. <i>See, e.g.,</i> <u>Southern Pac. Communications Co. v. American Tel.
> & Tel. Co.</u>, 740 F.2d 1011, 1018-1019 (D.C. Cir. 1984); <u>Bartlett v. Pullen</u>, 586
> A.2d 1263, 1265 (Me.1991). That rule is also favored by the Restatement

---

[5] Under Massachusetts law, "[t]he operation of res judicata requires the presence
of three elements: (1) the identity or privity of the parties to the present and prior
actions, (2) identity of the cause of action, and (3) prior final judgment on the merits."
<u>Silva</u>, 351 Fed. App'x at 7 (citations omitted).  Res judicata is inapplicable because the
Plaintiff was not party to the Probate Court action.

(Second) of Judgments § 13 comment f (1982). *But see, e.g.,* <u>Sandoval v.
Superior Court</u>, 140 Cal.App.3d 932, 936-937, 190 Cal.Rptr. 29 (1983); <u>Petition
of Donovan</u>, 137 N.H. 78, 81, 623 A.2d 1322 (1993).

   We are persuaded by the majority rule.

427 Mass. at 200-201.

   C. <u>Analysis</u>

   Applying the foregoing principles to the Plaintiff's Summary Judgment Motion, the

Court finds that collateral estoppel applies to resolve the issues in the Plaintiff's favor.  For

purposes of collateral estoppel, there exists a final judgment on the merits. On February 17,

2009, the Probate Court entered a Judgment on the Complaint for Modification filed by the

Debtor for reduction of his child support.  The Probate Court clarified its Judgment on

November 19, 2010.  The pendency of the Debtor's appeal does not alter the finality of the

judgment for purposes  of collateral estoppel.

   The Debtor was a party to the Complaint for Modification in the Probate Court.

Thatcher, the defendant in that action, was represented by the Plaintiff in this adversary

proceeding.  The Judgment of September 19, 2007 required the Debtor to pay "counsel fees

in the amount of $138,720.41 to Wife's counsel."  That same award, however, was entered

as an endorsement order on Thatcher's Motion for Attorney['] s Fees and Costs pursuant

to M.G.L. C. 208, § 38.  The Probate Court clarified that the award of attorney's fees and

costs in the Judgment was "in the nature of child support," adding that "the fee award

[was] to reimburse Mother in the event she had paid the attorney's fees" and "was a debt

to the Mother."

The issue that this Court must determine is whether that attorney's fee award is a DSO. The Clarified Judgment of the Probate Court makes that determination crystal clear. Thatcher was required to engage the Plaintiff to defend the Debtor's frivolous and intentionally injurious conduct in seeking to deprive his children of the support afforded them under the parties' Separation Agreement, which was incorporated in the Divorce Decree. Although the Debtor complains that an issue of fact exists as to whether the attorney's fees incurred by Thatcher were solely the result of the Plaintiff defending Thatcher and that neither the Plaintiff nor Thatcher submitted documentary proof to substantiate the fees, thereby creating a factual issue, the Court disagrees. The Probate Court, in its endorsement order of September 17, 2009, specifically found that the fees it awarded Thatcher in connection with the defense of the Complaint for Modification and the four-day trial were "fair and reasonable under all of the circumstances."

The award of attorney's fees to Thatcher was essential to the Judgment, and as noted above, appellate review was available, and the pendency of an appeal does not deprive the Judgment of its finality. The Debtor appealed the Probate Court's Judgment of September 17, 2009. The automatic stay of 11 U.S.C. § 362(a) did not bar him from prosecuting his appeal.

The issue in the Probate Court was whether the Debtor was entitled to a reduction in the amount of child support he was required to pay Thatcher for the children. The rejection of the Debtor's effort to seek a reduction in his child support required the Probate Court to determine the appropriate amount of such support. It did so and compensated

Thatcher for her attorney's fees incurred in defending the Complaint for Modification and

preventing the reduction in weekly support payments. First Circuit precedent compels this

Court to evaluate substance over form. As noted by the First Circuit Court of Appeals in

In re Werthen,

> [t]he federal courts have been unwilling to treat the label applied by the divorce court as controlling for Bankruptcy Code purposes. Nominally, the critical issue is whether the divorce court judge "intended" a particular award to be for support or for something else. In practice, courts look at a range of factors, including the language used by the divorce court and whether the award seems designed to assuage need, as discerned from the structure of the award and the financial circumstances of the recipients.

329 F.3d at 273 (citations omitted); *see also* In re Golio, 393 B.R. at 63. The language used

by the Probate Court in its Clarified Judgment is unequivocal. The Probate Court intended

that the attorney's fee awarded to the Plaintiff was to reimburse Thatcher for the attorney's

fees she incurred protecting her children from the Debtor's callous conduct in seeking to

reduce their support.

The Court finds that the decisions of the First Circuit, and the unequivocal intention

of and lanuguage used by the Probate Court compel the conclusion that the attorney's fees

are a DSO. The  numerous decisions recognizing that under BAPCPA the award of

attorney's fees may be excepted from discharge as DSOs or under 11 U.S.C. § 523(a)(15)

also support this conclusion. The award of the attorney's fees to the Plaintiff did not

extinguish Thatcher's liability to the Plaintiff. Indeed, Thatcher has paid significant sums

to the Plaintiff to satisfy her obligation to it. Under either subsection, collateral estoppel

prevents the Debtor from raising issues that are tangential to the Judgment.

The Debtor's arguments as to the absence of a contract between Thatcher and the Plaintiff and the excessive nature of the fees do not constitute issues of material fact which preclude the allowance of the Summary Judgment Motion. Even were the Court to accept the Debtor's argument that the attorney's fee award is not a DSO and should be discharged because it was a sanction, the Probate Court's Clarified Judgment establishes that the attorney's fees would be nondischargeable under 11 U.S.C. § 523(a)(6) as a willful and malicious injury. As the Probate Court determined, Thatcher was injured by the need to defend "frivolous litigation which was commenced . . . intentionally without just cause and with specific intent to injure the Mother."

Because Thatcher's Complaint for Civil Contempt was consolidated with the Debtor's Complaint for Modification and the award of attorney's fees to the Plaintiff pertained to that action, as well as the Debtor's action, collateral estoppel precludes the Debtor from arguing that his conduct in causing Thatcher to needlessly incur attorney's fees is excepted from discharge because the amount of the fees would be nondischargeable under 11 U.S.C. § 523(a)(6). *See generally* Liddell v. Peckham (In re Peckham), 442 B.R. 62, 85 (Bankr. D. Mass. 2010) ("[I]n the absence of collateral estoppel, the contempt judgment must be based on conduct of the debtor that is both willful and malicious for that judgment to be nondischargeable under § 523(a)(6), and that the surrounding circumstances will determine the true nature of the debtor's conduct, without regard to whether the contempt order was compensatory or imposed to uphold the dignity of the court.").

In Peckham, this Court, citing Suarez v. Barrett (In re Suarez), 400 B.R. 732, 736-37

22

(9th Cir. BAP 2009), observed:

> "Section 523(a)(6) does not make 'contempt' sanctions nondischargeable per se, and neither does any other subpart of section 523(a)." 400 B.R. at 737. . . "Whether contempt sanctions are nondischargeable accordingly depends not on whether they are labeled as 'contempt,' but on whether the conduct leading to them was 'willful and malicious.'"

Id. at 80 (footnote omitted).   The Probate Court, in its decision and Clarified Judgment, made findings sufficient to collaterally estop the Debtor from arguing that the fee award is excepted from discharge as a sanction.   Accordingly, the Court concludes that the fee award could be excepted from discharge under 11 U.S.C. § 523(a)(6).

D. The Debtor's Motion to Avoid Judicial Lien on Debtor's Homestead

Section 522(f)(1)(A) permits the avoidance of judicial liens that impair debtors' exemptions.   It provides in pertinent part:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5) . . . .

11 U.S.C. § 522(f)(1)(A).   Having found that the Debtor's obligations under the Probate Court Judgment, as clarified, is a DSO, the Debtor cannot avoid the judicial lien created by the writ of attachment against 4 High Rock Road, Wayland, Massachusetts.   Accordingly, the exception set forth in subparagraph (A) is applicable, and the Debtor is precluded from avoiding the fixing of the lien.

23

**IV. CONCLUSION**

In view of the foregoing, the Court shall enter orders granting the Plaintiff's Second Supplemental Motion for Partial Summary Judgment, denying the Debtor's Motion to Avoid Judicial Lien.   This decision establishes the Plaintiff's Status and Rights.  Thatcher is a DSO creditor with a nonavoidable judicial lien against the Debtor's property in Wayland.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 21, 2011